## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| ERICA DYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LEGACY CP MAINE, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT AND JURY TRIAL DEMAND

Plaintiff Erica Dyer complains against Defendant Legacy CP Maine, LLC, as follows:

## PARTIES

1. Plaintiff Erica Dyer is a resident of Greenbush, Maine.

2. Defendant Legacy CP Maine, LLC ("Defendant" or "Legacy") is Maine limited liability company, with headquarters in Augusta, Maine, and is licensed to do business in the State of Maine.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. §§ 1331.

4. Venue is proper in the District of Maine under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Maine. Under Rule 3(b) of the Rules of this Court, this action is properly filed in Bangor because the events at issue occurred in Penobscot County.

5. With respect to Plaintiff's claims under the Maine Human Rights Act ("MHRA"), Maine Whistleblowers' Protection Act ("MWPA"), and Americans with Disabilities Act ("ADA"), Plaintiff has exhausted all administrative remedies and has otherwise met all conditions precedent before commencing suit, including obtaining a "Notice of Right to Sue" from Maine Human Rights Commission.

## JURY TRIAL DEMAND

6. Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues triable to a jury.

## FACTUAL ALLEGATIONS

7. Legacy CP Maine, LLC operates several Wendy's fast-food restaurants throughout the State of Maine.

8. Plaintiff worked for Legacy's Wendy's restaurant on Union Street in Bangor, Maine from October of 2020, until she was forced to resign on or about March 9, 2023.

9. At all times, Plaintiff met or exceeded performance expectations.

10. Plaintiff is a qualified individual with multiple disabilities, able to perform the essential functions of her job with or without reasonable accommodations.

11. Plaintiff has been diagnosed with conditions including anxiety disorder, obsessive compulsive disorder, ADHD, and substance abuse disorder.

12. Plaintiff manages her disabilities with treatment and medication, including methadone.

13. During Plaintiff's employment with Legacy, Plaintiff disclosed her disabilities to her managers.

14. Plaintiff requested reasonable accommodations in the form of schedule modifications, in order to attend daily visits to a methadone clinic.

15. Early in her employment, when she was a crew member, Legacy granted Plaintiff's schedule accommodation by allowing her to go to the methadone clinic during her lunch break.

16. However, despite providing her with a reasonable accommodation (for a time), one of Plaintiff's Managers, Corey Rickard, frequently berated her about her disabilities.

17. Mr. Rickard referred to Plaintiff as "nut-job," "junkie," "squirrel," and "crazy," among other derogative terms. It happened so frequently that Plaintiff grew to expect Mr. Rickard to harass her every time he came to the Union Street Location.

18. In the Summer of 2022, Plaintiff briefly separated from Legacy.

19. She reluctantly returned in November of 2022, with the promise of a raise and a promotion to the Assistant Manager position.

20. Plaintiff had hoped that the promotion would result in Mr. Rickard treating her more respectfully.

21. She was wrong.

22. Upon her rehire, Mr. Rickard made Plaintiff assure him that she was "properly medicated" such that her mental health conditions would not be "so obvious to customers."

23. Mr. Rickard told Plaintiff that her disabilities "didn't send the kind of message that [he wanted] to put out for Wendy's."

24. Mr. Rickard continued to call her offensive and discriminatory names like "junkie," "squirrel," "crazy," "liar," and "asshole."

25. In her new role as Assistant Manager, Legacy no longer afforded Plaintiff a lunch break to allow her to visit the methadone clinic.

26. This caused Plaintiff to experience significant panic and stress.

27. For much of her time at Legacy, Mr. Rickard was the District Manager. However, a few months before Plaintiff was forced to resign, Mr. Rickard was promoted to Division Manager.

28. After his promotion, Mr. Rickard continued to harass Plaintiff because of her disabilities, and he encouraged the new District Manager, Jenn Smiley, to do the same.

29. In December of 2022, one of Plaintiff's team members reported feeling unsafe because of another team member's threatening conduct.

30. Plaintiff reported the issue to Mr. Rickard and Ms. Smiley.

31. After her report, Mr. Rickard and Ms. Smiley asked Plaintiff to meet with them in the restaurant dining room. Plaintiff expected the meeting to focus on the substance of her safety report.

32. Instead, Mr. Rickard began by asking Plaintiff is she was taking her ADHD medication.

33. He then accused Plaintiff of lying about being on medication for ADHD.

34. Plaintiff was humiliated. She offered to show him her prescription bottle so that Mr. Rickard would leave her alone. Mr. Rickard demanded to know about Plaintiff's medication dosages, and asked her if there was "any plan to increase it." He also asked her if "everything [was] ok at the [methadone] clinic."

35. Plaintiff opposed Mr. Rickard's questioning as wholly inappropriate. She asked why they were discussing her disabilities, instead of the safety reports she had elevated to them.

36. Mr. Rickard chastised Plaintiff for her "poor life choices," and told her she had to "stop making everyone else have to deal with the issues [her] ADHD brings."

37. Mr. Rickard accused Plaintiff of fabricating her safety report, even though the employee who initially complained to Plaintiff had confirmed her concerns with Mr. Rickard and Ms. Smiley.

38. Mr. Rickard and Ms. Smiley told Plaintiff to "get it together," and to put her "issues" behind her.

5

39. The entire conversation occurred within earshot of other employees. Team members were staring at Plaintiff. Some were even laughing at her when she returned to the kitchen.

40. Mr. Rickard's hostility toward Plaintiff continued into 2023.

41. On March 7, 2023, Mr. Rickard and Ms. Smiley were at the Union Street location, preparing for an upcoming inspection.

42. Mr. Rickard began quizzing the crew members on certain aspects of the drive-thru screen display.

43. Plaintiff assumed that he was addressing everyone present, so she answered one of his questions. In doing so, Plaintiff reached up to point to an area of the screen.

44. Mr. Rickard violently grabbed Plaintiff's arm, and spun her around.

45. Plaintiff was stunned, hurt, and extremely embarrassed.

46. Later that day, Mr. Rickard called Plaintiff a "liar" and an "asshole."

47. Mr. Rickard accused Plaintiff of "doing drugs again," and suggested that he wanted to check Plaintiff's medical records for proof that she was still in treatment.

48. Plaintiff told Mr. Rickard that her medical records were off-limits to him, but she assured him that she was very much still in recovery.

49. Mr. Rickard then began probing Plaintiff about her ADHD medication, again. He asked to see her prescription bottle.

50. Plaintiff refused, but assured him that she was taking that medication, as well.

51. Mr. Rickard then yelled: "Then what the fuck is wrong with you?!"

52. Plaintiff replied that "having ADHD doesn't mean there's anything 'wrong with you.'"

53. Mr. Rickard continued, commenting on how "messed up [Plaintiff is]." At the end of the encounter, he stated that Plaintiff's "real mental health issue is that [she is] an asshole."

54. Mr. Rickard degraded, belittled and humiliated Plaintiff. Plaintiff decided that is was impossible for her to continue working under such toxic conditions.

55. Two days later, on March 9, 2023, Plaintiff was forced to resign from her employment.

## COUNT I
### (Disability Discrimination – Disparate Treatment – MHRA and ADA)

56. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-55 of this Complaint.

57. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of her job with or without reasonable accommodations.

58. As set forth above, Defendant discriminated against Plaintiff with respect to the terms, conditions or privileges of her employment based on her disability, or, alternatively, on Defendant's perception that Plaintiff was disabled; treated Plaintiff differently than other employees who were not disabled; subjected Plaintiff to intolerable working conditions; denied without justification Plaintiff's requests for reasonable accommodations; and constructively terminated Plaintiff's employment, at least in part, because of her need for a reasonable accommodation.

59. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA and ADA:

- A. Reinstatement, or front pay in lieu of reinstatement;
- B. Back pay from March 9, 2023, with prejudgment interest;
- C. Compensatory damages;
- D. Punitive damages;
- E. An award of reasonable attorney's fees and all costs; and
- F. All other damages to which Plaintiff may be entitled.

## COUNT II
### (Hostile Work Environment Based on Disability – MHRA and ADA)

60. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-59 of this Complaint.

61. Plaintiff is a qualified individual with a disability who was able to perform the essential functions of her job with or without reasonable accommodations.

62. As set forth above, Defendant created an unreasonably hostile work environment based on or in response to Plaintiff's status as a person with a disability, or, alternatively, on Defendant's perception that Plaintiff was disabled. Such harassment was sufficiently severe or pervasive so as to alter the conditions of Plaintiff's employment and create an abusive and hostile work environment. Defendant's conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive, and Plaintiff in fact did perceive it to be so.

63. Defendant is liable for the acts and omissions of Plaintiff's supervisors, managers, and management personnel.

64. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA and ADA:

   A. Reinstatement, or front pay in lieu of reinstatement;
   B. Back pay from March 9, 2023, with prejudgment interest;
   C. Compensatory damages;
   D. Punitive damages;
   E. An award of reasonable attorney's fees and all costs; and
   F. All other damages to which Plaintiff may be entitled.

### COUNT III
### (Retaliation, Interference, Coercion, or Intimidation – MHRA and ADA)

65. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-64 of this Complaint.

66. Plaintiff engaged in activity protected under the anti-discrimination provisions of the MHRA and ADA; to wit, she opposed and complained to management about her need for reasonable accommodations, and the denial of her requests for accommodations. Further, Plaintiff opposed her supervisor's discriminatory treatment of her.

67. Defendant subjected Plaintiff to adverse employment action, to wit: Defendant retaliated against Plaintiff with respect to the terms, conditions or privileges of her employment; denied without justification her requests for accommodations; unlawfully interfered, intimidated, or threatened her while she exercised her rights to be free from discrimination or harassment; created hostile working conditions; and constructively terminated her employment, all because Plaintiff opposed the unlawful acts or practices of her employer, and all in violation of the MHRA and ADA.

68. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MHRA and ADA:

A. Reinstatement, or front pay in lieu of reinstatement;
B. Back pay from March 7, 2023, with prejudgment interest;
C. Compensatory damages;
D. Punitive damages;
E. An award of reasonable attorney's fees and all costs; and
F. All other damages to which Plaintiff may be entitled.

## COUNT IV
### (Whistleblower Retaliation – MWPA and MHRA)

69. Plaintiff hereby repeats, re-alleges, and incorporates by reference the foregoing paragraphs 1-68 of this Complaint.

70. Plaintiff engaged in activity protected under the MWPA; to wit, acting in good faith, she reported to her employer what she had reasonable cause to believe was a violation of a State or Federal law.

71. Defendant subjected Plaintiff to adverse employment action, to wit: Defendant retaliated against Plaintiff with respect to the terms or conditions of her employment; denied her request for reasonable accommodations; created hostile working conditions; made false statements; and constructively terminated her employment, all because Plaintiff made such reports and complaints, all in violation of the MWPA and MHRA.

72. As a direct and proximate result of Defendant's actions as set forth herein, Plaintiff suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment and for the following legal and equitable relief under the MWPA and MHRA:

    A. Reinstatement, or front pay in lieu of reinstatement;
    B. Back pay from March 7, 2023, with prejudgment interest;
    C. Compensatory damages;
    D. Punitive damages;
    E. An award of reasonable attorney's fees and all costs; and
    F. All other damages to which plaintiff may be entitled.

Dated: August 5, 2024                    Respectfully Submitted,

/s/ Andrew P. Cotter
Andrew P. Cotter

/s/ James A. Clifford
James A. Clifford

CLIFFORD & CLIFFORD, LLC
10 Moulton Street, Floor 5
Portland, ME 04101
(207) 613-9465
andrew@cliffordclifford.com
james@cliffordclifford.com